UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

LOUISVILLE WATER COMPANY                                              PLAINTIFF

v.                                                    CIVIL ACTION NO. 3:11CV-717-S

CSX TRANSPORTATION, INC.                                              DEFENDANT

### MEMORANDUM OPINION

This matter is before the court on motion of the plaintiff, Louisville Water Company ("LWC"), to remand the action to the Jefferson County, Kentucky, Circuit Court, Division Two. This action was removed to this court by the defendant, CSX Transportation, Inc. ("CSX"), under our federal question jurisdiction. CSX premised removal on the contention that LWC's petition for condemnation is completely preempted by the Interstate Commerce Commission Termination Act ("ICCTA"); *See* 49 U.S.C. § 10501(b).

The ICCTA was passed in 1995, deregulating the rail and motor carrier industries, and establishing the Surface Transportation Board having oversight authority over the nation's rail operations. The ICCTA was concerned for the continued economic viability of rail transportation. The ICCTA provides that its remedies with respect to regulation of rail transportation are exclusive and preempt the remedies provided under federal or state law. *See, Who's Driving the Train? Railroad Regulation and Local Control*, 75 U.Colo.L.Rev. 549 (Spring 2004).

As noted in *Columbiana County Port Authority v. Boardman Township Park District*, 154 F.Supp.2d 1165, 1180 (N.D.Ohio 2001),

> The Interstate Commerce Act, ch. 104, 24 Stat. 379 (1887), which, as amended, still governs federal regulation of railroads, has been recognized as 'among the most pervasive and comprehensive of federal regulatory schemes.' *Chicago & N.W. Transp. Co. v. Kalo Brick & Tile Co.*, 450 U.S. 311, 318, 101 S.Ct. 1124, 67 L.Ed.2d 258 (1981)...ICCTA also evidence the intent of Congress to preempt the field in which state law previously operated with respect to railroads. In particular, Congress granted the STB exclusive jurisdiction over all matters of rail transportation, including intrastate railroad tracks. *See* 49 U.S.C. § 10501(b)(2).

CSX contends that LWC's petition for condemnation is *per se* preempted by virtue of the reach of the federal regulatory scheme. It further claims that the proposed crossing of CSX's easement would "impede rail operations or pose undue safety risks," also requiring the court to find LWC's petition preempted. In the event the court finds preemption, removal was proper. Otherwise, the action must be remanded to state court.

The following facts are undisputed, except where specifically indicated.

LWC, a public utility, seeks to install a new Water Main along a stretch of Thierman Lane in the City of St. Matthews. The proposed project was planned for 2009, but, due to litigation in state and federal court, has not commenced. The proposed Water Main would be approximately thirty inches in diameter enclosed within a forty-two inch steel case pipe and would be run at a depth below CSX's railroad line.

LWC obtained the approval of its request to install the Water Main in the Thierman Lane public right of way from the City of St. Matthews. LWC also completed an application for approval of the construction from CSX. LWC did not submit any fees to CSX. There is some question concerning the submission by LWC of plans and specifications for approval by CSX, however we need not address that issue here. The parties are in agreement that LWC has consistently indicated that it will comply with CSX's Design & Construction Standard Specifications for Pipeline Occupancies. CSX declined to approve LWC's application, noting that LWC was required to pay

a CSX "license fee" and enter into a "Crossing Agreement" before CSX would grant LWC the right to cross its railroad lines.

When the parties were unable to resolve their differences, LWC filed suit in the Jefferson Circuit Court challenging CSX's right to require the "license fee" and "Crossing Agreement."

The Circuit Court defined the issues to be resolved as (1) What are the parameters of CSX's right of way? and (2) Does it have a right of way or a fee? CSX contended that it held a fee simple interest in the property and that it has a substantial safety justification for requiring LWC to submit its plans and pay for its review. (7/27/10 Opinion).

The Court concluded that:

(1) Because CSX's title was unclear, its interest in the property is an easement rather than a fee simple interest.

(2) Because CSX has only an easement, LWC may install its pipeline so long as it does not interfere with CSX's use and enjoyment of the property.

(3) The City of St. Matthews has no right to approve the Water Main project, as the 1968 easement granted to it by CSX's predecessor, Louisville and Nashville Railroad Company. for purposes of the Thierman Lane right of way did not include the right to permit the construction of pipelines thereon.

(4) As the right of authorization had been reserved by CSX and CSX has a protected interest in the property, CSX has the right to the use and enjoyment of its easement and it is entitled to set "conditions" to those coming upon the land, including contractual requirements concerning the design specification and Crossing Agreement.
(7/27/10 and 9/21/10 Opinions).

After these rulings issued, LWC amended its complaint and added a petition for condemnation. The amended complaint seeks to condemn CSX's "property interest," the negative covenant contained in Deed Book 4084, page 348, which states: [T]he right or easement hereby conveyed shall not include the right to construct or maintain or permit the construction or maintenance of any pipe lines, or of any pole lines for the conveyance of electric current for power or communication, or otherwise..."

LWC appears to reason that, as CSX has only an easement rather than a fee interest, LWC may proceed to install its pipeline so long as it does not interfere with CSX's use and enjoyment of the property. The Circuit Court so found. The "protected interest" which, according to the state court, allows CSX to impose "conditions" on those who enter into the property has been referred to as a "negative covenant" by which CSX reserved to itself the right to permit the construction of pipelines in the right of way. *(See* 7/27/10 and 9/21/10 Opinions*;* Deed Book 4084, p. 348; Mo. for Remand, pp. 8-9). Under its power of eminent domain, LWC "only seeks to condemn so much of CSX's Property Interest as is necessary for purposes of installing its Water Main." Amend. Compl. ¶ 24.

The prayer for relief seeks:

(1) an interlocutory order and judgment (a) confirming LWC's right to condemn CSX's property interest, (b) authorizing LWC to take possession of the property interest upon payment of costs and compensation, (c) adjudging that the Report of Commission conforms to statutory requirements, and (d) ordering the Master Commissioner to execute the appropriate legal instrument conveying and/or releasing the property interest to LWC; and

(2) a declaration that (a) construction of LWC's pipeline in compliance with CSX's pipeline design and construction specifications will ensure that the project will not interfere with CSX's full and free enjoyment of CSX's right of way, (b) that LWC need not obtain CSX's authorization to perform the work, and (c) that CSX has no right to require LWC to sign a Crossing Agreement or to pay any fees.

It also seeks costs, attorneys fees, pre- and post-judgment interest.

CSX removed the action to this court on the ground of preemption by the ICCTA, stating:

> The ICCTA established the Surface Transportation Board and in doing so granted it exclusive jurisdiction over transportation by rail carriers and the construction and operation of rail tracks. *49 U.S.C. 10501(b)*...The Sixth Circuit has adopted the as-applied analysis to railroad crossings. *Adrian v. Blissfield R.R. Co. v. Village of Blissfield*, 550 F.3d 533, 541 (6th Cir. 2008). "As-applied preemption covers state and local actions according to a factual assessment of whether that action would have the effect of preventing or unreasonably interfering with railroad transportation." *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321 (5th Cir. 2008). As-applied ICCTA preemption may apply if the railroad crossing dispute will "impede rail operations or pose undue safety risks. *Id.* at 332 (*quoting Maumee & W.R.R. Co.*, 2004 STB Lexis 140, 2004 WL 395835 (S.T.B.), at 2 (Mar. 3, 2004)). CSX[] believes that the Plaintiff's attempt to condemn the property will impede rail operations and pose undue safety risks. For these reasons, CSX[] maintains the Plaintiff's request to condemn the property is preempted by the ICCTA.

Notice of Removal, pp. 3-4.

In *Maumee*, *supra.,* the STB stated that in "routine, non-conflicting uses, such as non-exclusive easements for at-grade road crossings, wire crossing, sewer crossings, etc. are not preempted [by the ICCTA] so long as they would not impede rail operations or pose undue safety risks." *Maumee*, 2004 WL 395835 at *2.

CSX contends that the proposed project poses undue safety risks if not coordinated with CSX "because certain techniques, materials and equipment which may be acceptable for other types of right-of-way boring and excavating may not be adequate for railroad construction." Elder Aff., ¶

7. This purported "undue safety risk" is wholly non-specific and hypothetical. The assertion is not based upon any distinguishing features of the property or any specified deficiencies in CSX's prescribed methodology for pipeline construction with which LWC urges it will fully comply. CSX has offered nothing to substantiate that this is anything other than a garden variety water main installation with which LWC is, by its own estimation, wholly familiar and sufficiently experienced. We therefore find no evidentiary basis for the premise that the LWC Water Main plan poses an undue safety risk which would bring the action within the purview of the ICCTA.

CSX bears the burden of establishing that removal was proper. *See, Ahearn v. Charter Township of Bloomfield*, 100 F.3d 451 (6th Cir. 1996). CSX postulates a fear of the unknown. It contends that, absent a finding that the petition for condemnation is preempted, LWC's Water Main installation plan will go untested and thus possibly place the community at risk or cause disruption of rail activities.

To the extent that CSX has articulated the need for certain methodology in the construction of an underground pipeline, LWC has already agreed to comply with the processes and procedures set forth in CSX's specification. To the extent that any additional or different procedures are required for this particular property,[1] CSX will have an opportunity to address such need and any perceived risk in the state court proceeding. As noted herein, LWC's prayer for relief seeks to have the state court determine that LWC's construction of its water main in accordance with CSX's specification will not interfere with CSX's full and free enjoyment of CSX's right of way. Risk of damage to the community or property would constitute the ultimate interference with CSX's full and

---

[1] To date, none have been identified.

- 7 -

free enjoyment of its right of way. Therefore, CSX's concern that LWC's proposed plan will go unchecked is unfounded.

Questions concerning fees, Crossing Agreements, and responsibilities under the CSX specification are matters which devolve from the nature and extent of CSX's protected rights and the outcome of LWC's petition for condemnation and declaratory relief. We do not deign to predict how the state court will ultimately decide those questions. However, this court is limited to assessing whether it has jurisdiction by virtue of ICCTA preemption. Finding that there is no preemption in this instance, this action was improvidently removed and must be remanded to state court. A separate order will be entered this date in accordance with this opinion.

**IT IS SO ORDERED.**

September 14, 2012

**Charles R. Simpson III, Judge**
**United States District Court**